```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA                JUDGMENT INCLUDING SENTENCE
              -v-                       UNDER THE SENTENCING REFORM ACT

JOHNEL SCOTT      IN CLERK'S OFFICE     CASE NUMBER: CR-04-141 (ARR)
-------------------U.S. DISTRICT COURT, E.D.N.Y.---x
                                        SAM SCHMIDT, ESQ
                  ★   OCT 20 2005   ★   111 BROADWAY, 13th FL.
                                        NEW YORK, NEW YORK 10006
                                        Defendant's Attorney & Address
                          P.M.
THE DEFENDANT:
XXX  pleaded guilty to counts—one and two of the information.
___  was found guilty on counts                 after a plea of not guilty.
     Accordingly, the defendant is ADJUDGED guilty of such count(s), which involve the
following offenses:
```

| TITLE & SECTION | NATURE & OFFENSE | COUNT NUMBER(S) |
|---|---|---|
| 21 USC 846, 841(a)(1) & 841(b)(1)(A) | CONSPIRACY TO DISTRIBUTE & POSSESS WITH INTENT TO DISTRIBUTE COCAINE BASE. | ONE (1) |
| 18 USC 922(a)(1)(A) & 924(a)(1)(D) | ILLEGAL DEALING IN FIREARMS. | |

The defendant is sentenced as provided in pages 2 through    of this Judgment.
The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

___  The defendant has been found not guilty on count(s)        and is discharged as
     to such count(s).
___  Remaining counts are dismissed on the motion of the United States.
XXX  It is ordered that the defendant shall pay to the United States a special
     assessment of $200.00 which shall be due  XXX  immediately  ___  as follows:

It is further ORDERED that the defendant shall notify the United States Attorney for this
district within 30 days of any change of residence or mailing address until all fines,
restitution, costs, and special assessments imposed by this Judgment are fully paid.

Defendant's Soc. Sec #                          SEPTEMBER 22, 2005
                                                Date of Imposition of Sentence
Defendant's Date of Birth 12/3/81

Defendant's Mailing Address:                                              J.

778 PUTNAM AVENUE                               SEPTEMBER 22, 2005
                                                        Date
BROOKLYN, NEW YORK 11221
                                                A TRUE COPY ATTEST
Defendant's Residence Address:                  Date:
                                                ROBERT C. HEINEMANN
        ( SAME AS ABOVE )                          CLERK OF COURT

                                                By:

                                                     DEPUTY CLERK

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of one hundred twenty (120) months. As to count one the deft is sentenced to 120 months to run concurrently with undischarged state term of imprisonment. As to count two the deft is sentenced to sixty (60) months to run concurrently with count one and with undischarged state term of imprisonment for a total of 120 months.

__XXX__  The Court makes the following recommendations to the Bureau of Prisons:
THAT THE DEFT WHILE INCARCERATED SHALL PARTICIPATE IN SUBSTANCE ABUSE TREATMENT PROGRAM.

\_\_\_  The defendant is remanded to the custody of the United States Marshal.
\_\_\_  The defendant shall surrender to the United States Marshal for this district,

    \_\_\_ at _____ a.m./p.m. on _____.
    \_\_\_ as notified by the Marshal.

\_\_\_  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons

    \_\_\_ before 12:00 noon on _____.
    \_\_\_ as notified by the United States Marshal.
    \_\_\_ as notified by the Probation Office.

## RETURN

I have executed this Judgment as follows:

_____
_____
_____
_____

Defendant delivered on _____ to _____ at _____, with a certified copy of this Judgment.

                                                     United States Marshal

                                             By_____

Defendant: JOHNEL SCOTT  Judgment - Page    of
Case Number: CR-04-141(ARR)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of five (5) years.

While on supervised release, the defendant shall not commit another Federal, state, or local crime and shall comply with the standard conditions that have been adopted by this court (set forth on the following page). If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

1) DEFT SHALL PARTICIAPTE IN SUBSTANCE ABUSE TREATMENT WITH A TREATMENT PROVIDER SELECTED BY THE PROBATION DEPARTMENT. TREATMENT MAY INCLUDE OUTPATIENT OR RESIDENTIAL TREATMENT AS DETERMINED BY THE PROBATION DEPARTMENT. DEFT SHALL ABSTAIN FROM ALL ILLEGAL SUBSTANCES AND/OR ALCOHOL. DEFT SHALL CONTRIBUTE TO THE COST OF SERVICES RENDERED VIA CO-PAYMENT OR FULL PAYMENT IN AN AMOUNT TO BE DETERMINED BY THE PROBATION DEPARTMENT, BASED UPON THE DEFT'S ABILITY TO PAY AND/OR THE AVAILABILITY OF THIRD PARTY PAYMENT.

2) DEFT SHALL SUBMIT HIS PERSON, RESIDENCE, PLACE OF BUSINESS, VEHICLE, OR ANY OTHER PREMISES, UNDER HIS CONTROL TO A SEARCH ON THE BASIS THAT THE PROBATION OFFICER HAS REASONABLE BELIEF THAT CONTRABAND OR EVIDENCE OF A VIOLATION OF THE CONDITIONS OF THE RELEASE MAY BE FOUND. THE SEARCH MUST ALSO BE CONDUCTED IN A REASONABLE MANNER AND AT A REASONABLE TIME. FAILURE TO SUBMIT TO A SEARCH MAY BE GROUNDS FOR REVOCATION. THE DEFT SHALL INFORM ANY OTHER RESIDENTS THAT THE PREMISES MAY BE SUBJECT TO SEARCH PURSUANT TO THIS CONDITION.

3) DEFT SHALL NOT POSSESS ANY FIREARMS.

___ The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on probation or supervised release pursuant to this Judgment:

1) The defendant shall not commit another Federal, state or local crime;
2) the defendant shall not leave the judicial district without the permission of the court or probation officer;
3) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
4) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
5) the defendant shall support his or her dependents and meet other family responsibilities;
6) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
7) the defendant shall notify the probation officer within seventy-two hours of any change in residence or employment;
8) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
9) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
10) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
11) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
12) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
13) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
14) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

These conditions are in addition to any other conditions imposed by this Judgment.

Defendant: **JOHNEL SCOTT**  
Case Number: CR-04-141(ARR)

Judgment - Page      of

## FINE WITH SPECIAL ASSESSMENT

The defendant shall pay to the United States the sum of $ <u>200.00</u>, consisting of a fine of $ <u>N/A</u> and a special assessment of $ <u>200.00</u>.

___ These amounts are the totals of the fines and assessments imposed on individual counts, as follows:

This sum shall be paid ___ immediately
                       ___ as follows:

<u>XXX</u>  The Court has determined that the defendant does not have the ability to pay any fines, cost of confinement or supervision.

   ___ The interest requirement is waived.
   ___ The interest requirement is modified as follows:

THE COURT: In assessing Mr. Scott's sentence I am, of course, directed by Section 3553(a), to consider among the factors determining the sentencing range called for by the application of the now advisory sentencing guidelines. I have already determined by memorandum opinion dated April 18, 2005, that the defendant is not eligible for the safty valve provision, Section 5C1.2(a)(2), because he constructively possessed a firearm in relation to the drug offense conviction.

I believe there is no dispute that given the defendant's own statements to the authorities regarding the quantity of narcotics he sold, the presentence report correctly sets his base offense level at 38. Further, his constructive possession of a weapon in connection with the offense results in a two level enhancement under 2D1.1(b)(1).

1 Although the Probation Department originally applied the two
2 level obstruction enhancement, for the reasons set forth in
3 the second addendum to the presentence report, it has since
4 determined that enhancement not to be applicable and the later
5 conclusion is undisputed. There do remain two aspects of the
6 calculation in dispute:

7 First, defendant contends that he's entitled to a two
8 level downward departure adjustment for minor role, an
9 adjustment applicable to those who are plainly among the least
10 culpable of those involved, based on their relationship to
11 other participants, the importance of their actions to the
12 success of the venture, and their awareness of the nature and
13 scope of the criminal enterprise. The primarily criminal
14 venture at issue here is Nathaniel Ford's crack distribution
15 conspiracy at the Kingsborough Housing Project, an
16 organization led by Nathaniel Ford, who recruited a number of
17 street level distributors, several of whom appear to have
18 functioned at a level of participation in the conspiracy
19 identical to that of Mr. Scott.

20 One aspect of this case and sentence that I have
21 found extremely troublesome is that members of this conspiracy
22 have been prosecuted for their participation in the same crime
23 before three different judges in this courthouse. Beyond that,
24 the government has taken what appears to be contradictory
25 positions before different judges with respect to guidelines

1  calculations of different defendants who seem to be similarly
2  situated in the organization.  For example, the government
3  agreed that a street level seller, similar to defendant Scott,
4  was a minor player before one judge, but took the opposite
5  position before another judge with respect to another of
6  Ford's street level dealers, also apparently similarly
7  situated. In the instant case the government contests a minor
8  role adjustment.  As will become clear in a moment, I find the
9  circumstances such in this case such that other statutory
10 factors overwhelmingly militate against any substantial
11 reliance on the guidelines calculation to the extent that the
12 disputed findings including minor role are not material to
13 what I view as an appropriate sentence under the statute.
14 Nonetheless, I would assume, based on defendant's own
15 statements regarding his participation in the conspiracy,
16 including his repeated drug sales over a substantial period of
17 time and his knowledge of the workings of the conspiracy, that
18 he is not under a guidelines analysis entitled to an
19 adjustment for minor role.
20         Also in dispute is defendant's entitlement to a
21 guidelines adjustment for acceptance of responsibility.  The
22 Probation Department is correct that voluntary termination or
23 withdrawal from criminal conduct or association is appropriate
24 consideration in determining whether the defendant qualifies
25 for acceptance of responsibility.  Further, unlike the

1  Rodriguez case, defense counsel cites defendant in this case
2  committed further criminal conduct after entry of his only
3  guilty plea, not before entry of a second guilty plea on which
4  he was then sentenced.  On the other hand, I understand that I
5  am vested with considerable discretion in this area and
6  certain of the matters alluded to by defense counsel in
7  statements as well as other matters that I am about to
8  address, may notwithstanding the defendant's serious criminal
9  conduct, still weigh in favor of according this adjustment.
10         Nonetheless, as I have already indicated.  Whether or
11  not this guidelines adjustment is applied would have no effect
12  on the sentence to be imposed in this case.
13         Finally, because defendant has already been sentenced
14  to five years incarceration for the crime committed after
15  pleading guilty in this case, the probation department is
16  correct that he's in criminal history category two.
17  Therefore, under a guideline analysis, the defendant would
18  face a range of 324 to 405 months if he were not accorded
19  acceptance of responsibility, or a range of 210 to 262 months
20  if he were accorded acceptance of responsibility.
21         Again, although I have calculated and considered the
22  guidelines, none of the disputed guidelines issue has any
23  bearing on what I consider an appropriate sentence under the
24  totality of statutory factors.
25         We're all aware of the facts and circumstances

1 rendering this case unusual, if not unique.  As indicated in
2 the presentence report, on December 10, 2003, the defendant
3 surrendered on an outstanding ATF warrant pertaining to other
4 charges for which he has plead guilty in this case.  At that
5 time he was debriefed regarding firearms violations, and also
6 voluntarily provided information to law enforcement regarding
7 narcotics trafficking specifically, Ford's distribution
8 organization at the Kingsborough Houses.  Defendant appears to
9 have fully admitted his own level of involvement in that
10 organization, presumably he identified others involved in the
11 organization, and the government was at that time convinced of
12 his candor as the defendant was offered and received a
13 cooperation agreement.
14     Significantly, in addition to admitting to the full
15 extent of his crack sales for Ford's organization, the
16 defendant also told the government that the participants
17 maintained a small firearm under a garbage can lid accessible
18 to the area where drug deals were made.  A review of all of
19 the presentence reports prepared in the related cases of
20 defendant's co-conspirators indicates that Mr. Scott was in
21 fact the only source of this information, as the firearms
22 enhancement was not charged against any of the co-conspirators
23 except Mr. Scott.  Even Ford, the leader of the organization,
24 was not charged with the enhancement.  Mr. Scott's initial
25 candor in this regard was overwhelmingly significant in his

own case since it was solely on the basis of his own statement that he was rendered ineligible for safety valve consideration, requiring that he serve at least the mandatory minimum ten year imprisonment called for by the drug count to which he plead guilty.

In accordance with his cooperation agreement, the defendant entered pleas of guilty, both to the cocaine base conspiracy and to a charge of illegal dealing in firearms. The government made no request that he be remanded. Thereafter, the defendant committed what we all agree is a very serious crime, which was prosecuted by the state and also constituted a breach of his cooperation agreement in this case resulting in his loss of all benefits under that agreement. He was remanded and thereafter plead guilty in the state to robbery in the first degree, receiving on May 25, 2005 a sentence of five years custody and five years post release parole supervision.

Defense counsel takes the position that under the circumstances of this case and in light of the sentencing factors to be considered under 3553(a), a sentence of ten years imprisonment, the mandatory minimum prison sentence that I must impose to run concurrently with defendant's five years state sentence is, in the words of the statute, "sufficient, but not greater than necessary" to comply with the purposes set forth in the sentencing statute. I am in full agreement.

1          Of paramount significance in this case is the
2   statutory mandate that any sentence "imposed avoid unwarranted
3   sentencing disparities among defendants with similar records
4   who have been found guilty of similar conduct." The same theme
5   is echoed in the sentencing guidelines, identifying reduced
6   disparity and portionality as the two key goals of the
7   Sentencing Reform Act.  That is in Chapter One, Part A3.
8   Similarly, the Supreme Court explained in Booker that
9   sentencing, following that case, contemplates serving the
10  goals of avoiding unwarranted sentencing disparities and
11  proportionality.   That is Booker, 125 Supreme Court at 767.
12         As indicated earlier there are at least two
13  defendants who were sentenced by different judges in this
14  courthouse whose participation in Ford's crack organization
15  appears very similar to conduct committed by Mr. Scott.
16  Specifically, Albert Jones, a Street level crack seller for
17  Ford for an extended period of time, selling five hundred bags
18  per day, four days a week, and in possession of a full
19  awareness of Ford's organization was sentenced by Judge
20  Gershon in February of last year to 46 months incarceration.
21  Indeed the Probation Department originally computed Jones's
22  base offense level at 38, the same as the level computed by
23  the Probation Department for defendant Scott.  The government,
24  however, agreed to accord Jones both safety valve treatment
25  and a minor role adjustment reducing his guidelines sentence

1  to 46 to 57 months.

2  Quentin Smith, like defendant, was also a member of
3  Ford's crew of Street level crack sellers. He was charged and
4  sentenced only for conspiracy to distribute five or more grams
5  of crack, although according to the presentence report he,
6  like Scott, understood the full scope and nature of Ford's
7  drug distribution conspiracy, an assertion that was never
8  disputed. Smith was also responsible for dealing in more
9  firearms than with charged to Scott. He was sentenced by
10 Judge Sifton to 51 months imprisonment.

11 Notably too, Nathaniel Ford, the central figure of
12 this drug ring and its organizer and leader, who was found
13 guilty after trial, was sentenced by Judge Sifton to 210
14 months imprisonment.

15 In short, two defendants who appear indistinguishable
16 from the defendant in terms of the seriousness of their
17 conduct were sentenced to prison terms approximately one-third
18 of the 120 months that I must impose on the defendant; and the
19 architect and prime beneficiary of the scheme, Ford, was
20 sentenced to a term less than twice that that I must impose on
21 defendant, a street level seller.

22 By specifically referring to certain of Mr. Scott's
23 co-defendants I do not mean to suggest that these discrete
24 cases form the basis of my conclusion that a guideline
25 sentence in this case would create unwarranted sentencing

1   disparities.  Rather, I view the sentence of the noted street
2   level sellers in the Ford organization as representative of
3   the nationwide norm of sentences conferred on defendants found
4   guilty of similar conduct.
5           It is true that unlike Jones and Smith, defendant
6   committed an extremely serious state crime after pleading
7   guilty in this case.  However, he has already been sentenced
8   to a five year term of imprisonment for that conduct.  If
9   defendant's mandatory minimum ten years federal sentence were
10  to run concurrently with the undischarged portion of his state
11  sentence, then the incremental punishment imposed in this case
12  is at a minimum between 76 and 77 months imprisonment due to
13  the a manner the Bureau of Prisons will calculate the service
14  of his federal time.
15          In my view an incremental prison term of some six and
16  a half years is far more than ample to reflect the seriousness
17  of the offense, promote respect for the law and provide just
18  punishment as well as to afford adequate deterrence and
19  protect the public from further crimes from the defendant.
20          Nor is there anything in the defendant's history or
21  characteristics that would warrant a more serious sentence.
22          The government has recently submitted a letter and
23  argues again before me that the ten year mandatory minimum is
24  an appropriate sentence, that ten year term should be imposed
25  consecutively to, not concurrently with the undischarged

1 portion of defendant's state term of imprisonment.

2 As legal support the government turns to the
3 sentencing guidelines, arguing that two specific guidelines
4 provisions are so analogous to the circumstances here as to
5 embody a principle that should govern the determination in
6 this case. But the provisions the government invokes provide
7 no support for its position. Specifically, guideline 5G1.3(a)
8 applies solely to situations in which a defendant commits
9 another crime while serving a term of imprisonment. That is
10 not the case here. Nor is this case analogous to
11 circumstances addressed by guideline 7B1.2(f) concerning
12 sentences imposed for violation of probation or supervised
13 release. Rather, the circumstances here, where a defendant is
14 sentenced following the imposition of another prison term and
15 the crime for which defendant is to be sentenced preceded the
16 imposition of that sentence, are explicitly addressed by
17 guideline 5G1.2(c). That guideline confers on the Court the
18 discretion to impose the sentence concurrently, partially
19 concurrently, or consecutively to the undischarged term of
20 imprisonment to achieve a reasonable incremental punishment
21 for the instant offense.

22 Characterizing defendant's five year state sentence
23 as "meager", the government seems to suggest a need to impose
24 a sentence in this case that compensates for the state court's
25 leniency. Neither the guideline nor its application notes

                                                                23

1   anywhere suggest that such a consideration, in effect second

2   guessing the state court, is an appropriate factor in making

3   the determination as to the concurrent -- in making the

4   determination as to the concurrent or consecutive sentence--

5           MR. WEISER:  Your Honor, if I may briefly, there is a

6   point on that issue which could affect your reasoning.  Your

7   Honor, my understanding is one of the ways that that was

8   imposed was because there was an argument, and we should get

9   the record if you are relying on that, there was an argument

10  by defense counsel that the federal sentence would be

11  consecutive and that was a reason that the state court gave

12  such a lenient sentence -- in giving him five years, they had

13  the expectation that the federal sentence would be

14  consecutive, so it's actually a dupe of the State Court--

15          THE COURT:  The problem in my mind, I don't think

16  it's up to me to review what the state court did or why it did

17  it.  That's not what the statute tells me to do.  I don't

18  think it's appropriate in this sentence for me to go back and

19  make a determination as to what they relied on, what they

20  didn't rely on or why they did it.

21          MR. SCHMIDT:  Your Honor, so the record is clear, I

22  had no idea that that kind of statement was made in State

23  Court.  I'm unaware of that. This is the first I heard of it.

24          MR. WEISER:  That was in speaking with the prosecutor

25  there.

THE COURT: I don't think that the federal sentence appropriately second guesses the state sentence and that's even if I were fully informed of all of the facts and circumstances pertinent to State Court sentence and, of course, I have not been.

The application notes direct me to consider among others things the identical factors I just addressed as enumerated in Section 3553 A, the time served on the undischarged sentence, which as noted will likely result in incremental punishment of 77 months, and other circumstances relevant to the determination of an appropriate sentence. And this is in the statute in the application notes for the instant offense which have also been addressed. By running the sentence concurrently, defendant's incremental punishment for this offense still exceeds by three years the guideline sentence defendant would have received had he not cooperated, with his criminal history category enhanced to account for the state sentence that he recently received.

Accordingly, I'm going to sentence Mr. Scott on Count One to the custody of the Attorney General for a period of one hundred and twenty months to run concurrently with his undischarged state term of imprisonment and on Count Two to 60 months to run currently with Count One and his undischarged state term of imprisonment to be followed by a five-year period of supervised release with the special conditions I'm

1 going to require that he participate in substance abuse
2 treatment with a treatment provider selected by the Probation
3 Department. Treatment may include outpatient or residential
4 treatment. The defendant shall abstain from illegal
5 substances and or alcohol and shall contribute to the cost of
6 services rendered by a co-payment or full payment in an amount
7 to be determined by the Probation Department based on his
8 ability to pay and the ability of third-party payment. The
9 defendant shall also submit his person or residence, place or
10 business, vehicle or any other premises under his control to a
11 search on the basis that the probation officer has a
12 reasonable belief that contraband or evidence of a violation
13 of the conditions of release maybe found. The search must be
14 conducted in a reasonable manner and at a reasonable time.
15 Failure to submit to a search may be grounds for revocation
16 and the defendant shall inform any other resident that the
17 premises may be subject to search under this condition. And
18 obviously, the reasons for the search conditions are the
19 underlying offenses to which the defendant plead guilty.
20         Finally, I prohibit the possession of a firearm. I
21 make a finding Mr. Scott is unable to pay a fine, but I will
22 impose the mandatory $200 special assessment. I also
23 recommend that he be federally designated to whatever state
24 institution he will be in for the remainder of his state
25 sentence, and that at least when he's back in the hands of the

1  Bureau of Prisons, he receive substance abuse treatment while
2  serving the custodial portion of his sentence.
3  　　　　Mr. Scott, as you understand there are circumstances
4  in which a defendant may appeal the sentence.  You discuss
5  that with Mr. Schmidt.  If you choose to appeal a notice of
6  appeal must be filed within ten days and I'm sure counsel will
7  represent you.
8  　　　　MR. SCHMIDT:  Thank you, your Honor.
9  　　　　MR. WEISER:  Thank you, your Honor.
10 　　　　　　　　＊＊＊＊＊＊＊＊